JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 22-45 JGB (KKx)** | Date | February 8, 2022 |
| Title | *Juan Jose Diaz, Jr. v. Walmart, Inc.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order REMANDING Case to San Bernardino County Superior Court (IN CHAMBERS)

Before the Court is a Notice of Removal filed by Defendant Walmart, Inc. ("Defendant" or "Walmart"). ("Removing Defendant" or "Walmart"). ("Removal," Dkt. No. 1.) After considering the Removal Notice, the Court sua sponte REMANDS the case to the San Bernardino County Superior Court.

## I.   BACKGROUND

On August 31, 2021, Juan Jose Jr. Diaz ("Plaintiff" or "Mr. Diaz") filed a complaint against Walmart in the Superior Court of California for the County of San Bernardino. ("Complaint," Dkt. No. 1-2.) The Complaint asserts five causes of action: (1) disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"); (2) hostile work environment in violation of FEHA; (3) failure to prevent discrimination and retaliation in violation of FEHA; (4) failure to engage in the interactive process in violation of FEHA; and (5) failure to accommodate in violation of FEHA. (Complaint.)

The summons was issued and filed on September 29, 2021. (Dkt. 1-1 at 40.) Walmart contends that Plaintiff delivered a copy of the Complaint and the summons on Walmart's agent for service of process on December 9, 2021. (Removal ¶ 42.) Walmart removed to this Court on January 7, 2022 on the basis of diversity jurisdiction. (Removal.)

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332.

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Jackson v. Specialized Loan Servicing, LLC, 2014 WL 5514142, *6 (C.D. Cal. Oct. 31, 2014). The court must resolve doubts regarding removability in favor of remanding the case to state court. Id.

The district court may remand the case sua sponte or on the motion of a party. Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir.1988) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)). Such questions must be addressed at the outset of a case: "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex parte McCardle, 7 Wall. 506, 514, 19 L.Ed. 264 (1868). Thus, the Court must ordinarily address any jurisdiction questions first, before reaching the merits of a motion or case. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998).

"Doubt arising from inartful, ambiguous, or technically defective pleadings should be resolved in favor of remand." Charlin v. Allstate Ins. Co., 19 F. Supp. 2d 1137, 1140 (C.D. Cal. 1998). Further, a court "must resolve all material ambiguities in state law in plaintiff's favor" on a motion to remand. Macey v. Allstate Prop. & Cas. Ins. Co., 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002). "When there are real ambiguities among the relevant state law authorities, federal courts that are considering motions to remand should avoid purporting to decide how state courts would construe those authorities. (Id. at 1118.)

## III. FACTS

Mr. Diaz started working for Walmart on October 19, 2020. (Complaint ¶ 5.) He was hired as a packer, which entailed duties such as packing boxes of merchandise like food products and laundry detergents. (Id.) On or about June 9, 2021, Mr. Diaz was placed on a work restriction to lift no more than twenty-five pounds due to lower back pain and an eye injury. (Id. ¶ 6.)

Mr. Diaz gave his supervisor the work restriction letter. (Id.) His supervisor directed him to go home and contact Walmart's third-party claims administrator. (Id.) Mr. Diaz's doctor

placed Mr. Diaz on Total Temporary Disability ("TTD") from June 16, 2021 to July 31, 2021. (Id. ¶ 7.) Walmart received notice of the work restriction letter and placed Mr. Diaz on TTD through the end of July. (Id. ¶ 8.)

Even though Walmart knew Mr. Diaz requested an accommodation and was on TTD, Walmart elected to terminate Mr. Diaz on July 20, 2021 for job abandonment. (Id. ¶ 9.) Mr. Diaz exhausted his administrative remedies and obtained a right to sue letter from the Department of Fair Employment and Housing. (Id., Ex. A.)

Mr. Diaz's prayer for relief requests: (1) general damages and special damages in excess of $50,000…including lost earnings, other employee benefits, past and future, emotional distress, humiliation, and mental anguish; (2) compensatory, statutory damages, penalties and restitution; (3) punitive damages; (4) attorney's fees; and costs and fees. (Complaint at 9.)

### IV. DISCUSSION

#### A. Citizenship

A defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332. Complete diversity of citizenship is required, i.e., "the citizenship of each plaintiff [must be] different from that of each defendant." Hunter v. Philip Morris USA, 582 F.3d 1039, 1043 (9th Cir. 2009).

Mr. Diaz is a citizen of California. (Complaint.) Walmart is incorporated under the laws of Delaware and its principal place of business is in Arkansas. (Removal ¶ 15.) Thus there is complete diversity among the parties.

#### B. Amount in Controversy

The removing defendant bears the burden of proving the amount in controversy [in excess of $75,000] has been met. Lowdermilk v. United States Bank Nat'l Ass'n, 479 F.3d 994, 998 (9th Cir. 2007). If the complaint does not allege that the amount in controversy has been met, the removing defendant must plausibly allege in its notice of removal that the amount in controversy exceeds the jurisdictional threshold. Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 88 (2014). If the court questions the defendant's allegations, the defendant must establish that the jurisdictional requirement has been met by a preponderance of the evidence. Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir. 1992).

The Complaint does not allege that the amount in controversy exceeds $75,000. (See Complaint.) The Court must determine whether Defendant met its burden in plausibly alleging that the amount in controversy meets the jurisdictional threshold. As explained below, the Court finds that Defendant's estimates for back and front pay, emotional distress damages, and punitive damages are exceedingly speculative.

1. Lost Wages

Walmart contends that the Court can reasonably ascertain from Plaintiff's complaint and his prayer for relief amount in controversy is over $75,000. (Removal ¶ 23.) Walmart asserts that Plaintiff was paid approximately $20.25 per hour and worked approximately 31 hours per week. (Id. ¶ 27.) The date of Mr. Diaz's termination and the date of removal is 23 weeks. Walmart maintains that "Plaintiff's back wages claim [for that period]…is more than $14,438.25." (Id.) The Court finds it unlikely that Mr. Diaz's backpay amount would be significantly different than Walmart's estimation.

Walmart contends that "[c]ourts in this [d]istrict regularly consider the likely back pay award from the date of termination until the date of likely judgment." (Id.) It appears that this assumption accounts for the bulk of Walmart's amount in controversy calculation, in conjunction with Mr. Diaz's claim for future lost wages. Walmart projects the lost wages amount—from the date Plaintiff filed the Complaint to an estimated date of likely judgment—to be approximately $67,797.00. (Id.) Walmart estimates one year of front pay to equal an additional $32,643.00 and argues that the front and back pay claims alone equal $100,440.00, which exceeds the jurisdictional threshold. (Id. ¶¶ 29, 30.)

Although courts may consider both back and front pay to determine the amount in controversy, many courts in this district have declined to project future lost wages beyond the date of removal. See Soto v. Kroger Co., 2013 WL 3071267, *3 (C.D. Cal. June 17, 2013); Sasso v. Noble Utah Long Beach, LLC, et al., 2015 WL 898468, at *4 (C.D. Cal. Mar. 3, 2015); Aguilar v. Wells Fargo Bank, 2015 WL 6755199, *4 (C.D. Cal. Nov. 3, 2015); Paris v. Michael Aram, Inc., 2018 WL 501560, *2 (C.D. Cal. Jan. 22, 2018); Barrera v. Albertsons LLC, 2019 WL 1220764, *2 (C.D. Cal. Mar. 15, 2019). Thus, the lost wages award, calculated from the date Mr. Diaz filed the Complaint to the date of removal, is approximately $14,438.25. This amount falls far below the jurisdictional threshold.

2. Prospective Attorney's Fees

Courts must include future attorneys' fees recoverable by statute in determination of the amount in controversy. Fritsch v. Swift Trans. Co. of Ariz., LLC, 899 F. 3d 785, 794 (9th Cir. 2018). However, Walmart does not provide any attorney's fees calculation that is specific to Plaintiff's counsel. Walmart instead argues that "other trial court decisions reveal estimates for the number of hours expended through trial for single-plaintiff employment cases have ranged from 100 to 300 hours." (Removal ¶ 35.) Walmart cites one case for this broad generalization. (Id.)

Walmart next contends that federal courts in California have held that a reasonable rate for employment cases in $300 per hour, and again cites one case for this proposition. (Id. ¶ 36.) Walmart provides that a conservative estimate of attorneys' fees in this action will amount to a minimum of $30,000. (Id.)

Even if accurate, the $30,000 in attorneys' fees estimate, in addition the wage loss claim for $14,438.25, falls below the $75,000 jurisdictional threshold.

### 3. Punitive Damages

Walmart contends that Plaintiff's prayer for punitive damages should be calculated in the amount of controversy. However, even though punitive damages may be included in the amount of controversy calculation at times, see Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001), the Court is not convinced that a punitive damages award should be included in the amount in controversy here.

To support its argument, Walmart cites one case from the Northern District in California from 2002. (Removal ¶ 37.) However, Walmart did not attempt to analogize or explain how this cited case is similar to the instant action. The citation "merely illustrates that punitive damages are possible, it in no way shows that a punitive damage award is likely or even probable in the instant action." Killion v. Autozone Stores Inc., 2011 WL 590292, *2 (C.D. Cal. Feb. 8, 2011). The Court therefore has no basis to include punitive damages in the amount in controversy calculation.

### 4. Emotional Distress Damages

Walmart argues that Plaintiff's potential emotional distress award pushes the amount in controversy well above the $75,000 baseline. (Removal ¶¶ 31, 32.) Walmart relies on Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) and a number of other cases that stand for the proposition that emotional damages in a successful employment discrimination case may be substantial. Walmart thus concludes that the potential for emotional distress damages would place the amount in controversy far above $75,000.

The Court is unconvinced. Again, Walmart merely cited to a list of other employment cases with large emotional distress damages without analogizing or explaining, beyond simple parentheticals, how those cases are similar to the instant action to apply equivalent damages. (See Highham Declaration, Exs. G – K.) The Court reviewed Exhibits G – K, which are court decisions of single-plaintiff employment actions where the plaintiff won damages in large amounts. In the majority of these cases, the plaintiffs were subjected to egregious discrimination over a period of time. For example, one plaintiff was subjected to severe discrimination because of her age, sexual orientation, and disability, among other things, for over a year. (Ex. G.) Another plaintiff was subjected to significant discrimination for nearly a year. (Ex. H.) One case appears to present somewhat similar circumstances—a plaintiff was hired by an employer defendant in 2006, began to experience pain in chest and shoulders, and began to affect his ability to perform his job duties. (Ex. J.) However, the similarities end there. The plaintiff reported his injury and his supervisor said that he would be terminated if he could not perform his duties, so plaintiff continued to work without medical treatment. (Id.) About two years later, the plaintiff finally received a doctor-issued work restriction letter. (Id.) He was placed on merchandise

inspection. (Id.) His supervisor would not allow other employees to help plaintiff, and specifically told other employees to not assist plaintiff in any way. (Id.) He was reportedly fired the same day his supervisor inquired as to his injury. (Id.)

The Complaint does not allege facts analogous to any of these cases. Further, Walmart does not even suggest an emotional distress damages amount that the Court should take into consideration—it merely cites cases with large awards. Thus, Walmart's argument that Plaintiff's emotional distress damages should be calculated into the amount in controversy is based on speculation and not supported by facts. The Court therefore has no basis to consider Walmart's argument for emotional distress damages in the amount in controversy.

Walmart plausibly alleges that the amount in controversy amounts to $44,438.25 (attorneys' fees and back/future pay). This falls beneath the $75,000 threshold. Any doubt regarding the existence of subject matter jurisdiction should be resolved in favor of remanding the action to state court. Gaus, 980 F.2d at 566. The Court finds that Walmart failed to establish the requisite amount in controversy. Thus, the Court lacks subject matter jurisdiction.

## V.   CONCLUSION

For the reasons above, the Court REMANDS the action to the Superior Court for the County of San Bernardino.

The Clerk is directed to close the case.

**IT IS SO ORDERED.**